Nita **REITER**, Plaintiff,

v.

**ZIMMER, INCORPORATED**, Defendant.

**No. 91 Civ. 8599 (LMM).**

United States District Court,
S.D. New York.

Aug. 17, 1993.

Lewis Rosenberg and Barry I. Levy of Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, for plaintiff, Nita Reiter.

James P. Barrett and Daniel J. Keenaghan of Simpson Thacher & Bartlett, New York City, for defendant, Zimmer, Inc.

### *MEMORANDUM AND ORDER*

McKENNA, District Judge.

By this Order, the Court decides defendant Zimmer, Incorporated's ("Zimmer") motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Plaintiff Nita Reiter ("Plaintiff" or

"Reiter") opposes Zimmer's motion and seeks an order for a continuance, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, staying this Court's determination of Zimmer's summary judgment motion. For the reasons that appear below, Zimmer's motion is granted in part and denied in part and Plaintiff's motion is denied.

*Background*

"On September 18, 1989, while a patient at The Hospital for Joint Diseases Orthopedic Institute, plaintiff ... underwent surgery to replace her left hip with a prosthesis." (Zimmer's 3(g) Statement ¶ 1.) Plaintiff's surgeon, Dr. Victor Frankel, "prepared Ms. Reiter's femur for the reception of the prosthesis by first enlarging the bone canal with reamers." (*Id.* ¶ 2.) Dr. Frankel planned "to fill the femoral canal with a grouting material, commonly called 'bone cement', in which the prosthesis would be seated." (*Id.*) Bone cement is an acrylic material comprised of two basic components, a polymer and a monomer. (*Id.* ¶ 4.)

According to Reiter, "the specific batch of Zimmer bone cement used during the course of her surgery, hardened prematurely, resulting in the plaintiff's femur being needlessly fractured, causing a failed procedure with a permanent disability." (Pl.'s Mem. at 1.) It is undisputed that the "medical records in this case show that Dr. Frankel used Zimmer bone cement with batch number 66688200, expiration date of December, 1991." (Zimmer's 3(g) Statement ¶ 10.) Dr. Frankel testified that "[t]he premature hardening of the cement" caused the cracking of Reiter's femur. (Ex. A to Levy Aff. at 10.) Bone cement is prepared by mixing its component parts "in a bowl, wait until it got sort of smooth on the surface, then roll it around in your hands for a while and make sort of a snake out of it, poke that down the thermal canal." (*Id.* at 46.) After pouring the bone cement into a dispenser gun, Dr. Frankel "felt it was too viscous to go through the small hole in the canal, and I pulled it out, as I have done in other cases, to roll it up and push it down the canal." (*Id.* at 47.) According to Dr. Frankel, the average set time for Zimmer's bone cement is approximately ten to twelve minutes.[1]

As a result of the premature hardening of the bone cement, Dr. Frankel was unable to insert the prosthesis beyond the midpoint of Plaintiff's femur. He "tried to seat the prosthesis further by tapping it with a hammer." (Zimmer's 3(g) Statement ¶ 9.) "The forces created by striking the prosthesis caused plaintiff's femur to crack.... At that point, Dr. Frankel decided to remove the prosthesis and the bone cement and make a second attempt with a new batch of bone cement.... His second attempt was successful and he concluded the operation." (*Id.*)

Plaintiff seeks damages for personal injuries and asserts state law tort causes of action sounding in strict products liability (Compl. ¶ 16) and negligence. (*Id.* ¶ 20.) The parties agree that this Court has subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1332.

*Discussion*

Summary judgment may be granted only where "there is no genuine issue as to any material fact" and a party is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court is not to weigh evidence and decide the truth, but rather to determine whether or not there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Owens v. New York City Housing Authority,* 934 F.2d 405, 408 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991). The Court must draw all reasonable inferences, and resolve all ambiguities, in favor of the nonmoving party. *Cargill, Inc. v. Charles Kowsky Resources, Inc.,* 949 F.2d 51, 55 (2d Cir. 1991); *Schwabenbauer v. Board of Edu-*

---

1. Q. What has been your experience, if I use the word set time, is that a meaningful word?
A. Yes.
Q. What does that mean to you?
A. The time it takes the cement to get hard.
Q. What did you expect in terms of the Zimmer bone cement as to the set time?
A. About 10 to 12 minutes, some longer.
Q. That would be 10 to 12 minutes from the time it was first mixed?
A. Yes.
(*Id.* at 48–49.)

*cation,* 667 F.2d 305, 313 (2d Cir.1981). A motion for summary judgment must be denied if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

In the present case, the material facts are not in dispute except with respect to Plaintiff's negligent manufacture claim, and the parties' motions can, with that limitation, be determined as a matter of law.

■ At issue is the preemptive effect of the Federal Food, Drug, and Cosmetic Act (the "FFDCA"), 21 U.S.C. §§ 301 *et seq.,* and amendments to the FFDCA, known as the Medical Device Amendments of 1976 (the "MDA"), 21 U.S.C. §§ 360c *et seq.,* on Plaintiff's common law tort claims. Pursuant to the MDA, the Food and Drug Administration (the "FDA") classifies all medical devices in one of three categories. "Class I devices generally pose little or no threat to public health and safety … Class II items are more complex than Class I and include such devices as oxygen masks used in anesthesiology and tampons." *Stamps v. Collagen Corp.,* 984 F.2d 1416, 1418 (5th Cir.), *petition for cert. filed,* 61 U.S.L.W. 3870 (U.S. June 16, 1993) (No. 92–1989). Class III devices require premarket approval from the FDA because such items "present[ ] a potential unreasonable risk of illness or injury." 21 U.S.C. § 360c(a)(1)(C)(ii)(II). Polymethylmethacrylate bone cement, the type of bone cement utilized in Plaintiff's hip surgery, is a Class III device. 21 C.F.R. § 888.3027(b).[2] Certain FDA approvals are required before a Class III device may be commercially distributed. 21 C.F.R. § 888.3027(c).

In her opposition to Zimmer's motion, Reiter relies to a large extent on the contention that "all of the regulations applicable [to] Class III medical devices are merely general procedural requirements." (Pl.'s Mem. at 21.) *"Quite simply, there exist no specific regulations or requirements for the manufacturing or testing of bone cement,* and more practically, none of the statutory or regulatory provisions which are applicable for approval of Class III devices are device-specific in character." (*Id.*) Under the particular circumstances of the instant case, the Court cannot agree.

On May 17, 1976, the FDA approved Zimmer's new drug application for its polymethylmethacrylate bone cement. The FDA "concluded that the drug is safe and effective for use as recommended in the submitted labeling." (Ex. B to Sherman Aff.) "[T]he FDA originally classified [Zimmer's bone cement] as a drug, not a medical device." (Zimmer's Reply Mem. at 2.) According to Zimmer, prior to its approval, "the FDA required that Zimmer conduct clinical studies with the bone cement before Zimmer could submit a New Drug Application (NDA) to the FDA for its consideration." (*Id.* at 3.) These studies "lasted three years and were conducted under the strict protocols established by the FDA for clinical studies of new drugs." (*Id.*) With enactment of the MDA, bone cement was reclassified as a medical device. 21 C.F.R. § 888.3027(a) & (b). "Eventually Zimmer's NDA designation for bone cement changed to Premarket Approval of Application (PMA) designation, and Zimmer's manufacture and sale of bone cement became subject to the FDA's regulations." (Sherman Aff. ¶ 15.)

The Supremacy Clause of the Constitution[3] invalidates state laws that interfere with, or are contrary to federal law. The Supreme Court long ago held that "basic to this constitutional command" is the fact that all state law that conflicts with federal law is without effect. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981) (citing *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579 (1819)). When "the field which Congress

---

**2.** "The device is intended for use in arthroplastic procedures of the hip, knee, and other joints for the fixation of polymer or metallic prosthetic implants of the living bone." 21 C.F.R. § 888.-3027(a).

**3.** "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof;

and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

is said to have pre-empted has been traditionally occupied by the States ... 'we start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

"In determining whether a federal law pre-empts a state regulation, 'our task is to ascertain Congress' intent in enacting the federal statute at issue.'" *Cable Television Association of New York, Inc. v. Finneran*, 954 F.2d 91, 95 (2d Cir.1992) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 2898, 77 L.Ed.2d 490 (1983)). In order to discern Congress' intent in enacting the FFDCA and the MDA, the starting place is the statute itself. "[W]here ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citations omitted); *see also United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 506 (2d Cir.1991) ("words of a statute should be given their normal meaning and effect in the absence of a showing that some other meaning was intended"). "[T]he purpose of a statute includes not only what it sets out to change, but also what it resolves to leave alone.... The best evidence of that purpose is the statutory text adopted by both Houses of Congress and submitted to the President." *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 98–99, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991).

Section 360k(a) of the MDA provides, in pertinent part, that:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a) (1988).[4] The MDA "gave the FDA comprehensive regulatory authority over medical devices for the first time." *Slater v. Optical Radiation Corp.*, 961 F.2d 1330, 1331 (7th Cir.) (citing H.R.Rep. No. 853, 94th Cong., 2d Sess. 1, 6–13 (1976)), *cert. denied*, —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992). The MDA, *inter alia*, authorizes the FDA to promulgate implementing regulations, such as 21 C.F.R. § 808.1(b). 21 U.S.C. § 371(a) (1988). As already noted, the FDA regulation that parallels section 360k(a) extends that section's "any requirement" language to state statutes, ordinances, regulations, and court decisions. *See* 21 C.F.R. § 808.1(b). "As with administrative agencies generally, the FDA's construction of the statute is entitled to 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Stamps*, 984 F.2d at 1421 n. 2 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

Central to any preemption discussion is the Supreme Court's recent decision, *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), concerning the preemptive effect of section 5(b) of the Public Health Cigarette Smoking Act of 1969 (the "PHCSA"). "Congress' intent may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Id.* —— U.S. at ——, 112 S.Ct. at 2617 (quoting *Rath Packing Co.*, 430 U.S. at 525, 97 S.Ct. at 1309). The plurality opinion in *Cipollone*, with the concurrence of

---

**4.** Certain regulations have been promulgated by the FDA in connection with section 360k of the MDA. In fact, the FDA has declared that preemption, though equally applicable whether the state is acting "by statute, ordinance, regulation, or court decision" 21 C.F.R. § 808.1(b), is limited to cases in which the FDA "has established specific counterpart regulations or there are other specific requirements applicable to a particular device under" the federal legislation. 21 C.F.R. § 808.1(d).

In this case, the FDA's approval of Zimmer's bone cement in May, 1976 contained specific conditions. (*See* Ex. B to Sherman Aff.)

the other justices, interpreted the phrase "requirement or prohibition" contained in section 5(b) of the PHCSA to extend beyond positive state enactments, to include certain common law damage actions. *Id.* — U.S. at ——, 112 S.Ct. at 2620. "[C]ommon law damages actions of the sort raised by petitioner are premised on the existence of a legal duty and it is difficult to say that such actions do not impose 'requirements or prohibitions.'" *Id.* In his concurrence in the judgment, Justice Scalia, with whom Justice Thomas joined, agreed with the plurality that "'the language of the [1969] Act plainly reaches beyond [positive] enactments.'" *Id.* — U.S. at ——, 112 S.Ct. at 2634 (quoting *id.* — U.S. at ——, 112 S.Ct. at 2620).

The existence in the MDA of an express preemption provision precludes reliance on the doctrine of implied preemption. Therefore, the Court need only examine the MDA's express language.[5] The parties to this action have presented this Court with no decisions of this Circuit that interpret the language and preemptive effect of the MDA on common law tort claims. This Court is aware of no such Second Circuit decisions. The parties have, however, located decisions of other Circuits relevant to the inquiry at hand.

"The language of subsection (a) [of section 360k] and the definition of state requirement promulgated under it demonstrate a field of preemption which is broad, but limited. Any state requirement which, in effect, establishes a new substantive requirement for the device in a regulated area such as labeling, is preempted." *King v. Collagen Corp.,* 983 F.2d 1130, 1134–35 (1st Cir.), *petition for cert. filed,* 61 U.S.L.W. 3854 (U.S. June 14, 1993) (No. 92–1979).

A state tort cause of action will be preempted if, in the context of the particular case, it (1) constitutes a requirement different from, or in addition to, any requirement the MDA makes applicable to

the device at issue and (2) relates either to (a) the safety or effectiveness of the device or (b) any other matter included in a requirement made applicable to the device by the MDA.

*Stamps,* 984 F.2d at 1421 (footnote omitted). As the plurality in *Cipollone* made clear "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." *Cipollone,* — U.S. at ——, 112 S.Ct. at 2620.[6] Additional support for the proposition that common law damages actions constitute an additional or different requirement can be found in *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). "[State] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Id.; see also King v. E.I. Dupont de Nemours & Co.,* 996 F.2d 1346, 1349 (1st Cir.1993) ("The FIFRA language prohibiting the states from 'imposing or continuing in effect any requirements,' 7 U.S.C. § 136v(b), is virtually indistinguishable from the state-imposed 'requirement' language that *Cipollone* held preempted the state common law tort claims based on inadequate warning."); *Papas v. Upjohn Co.,* 985 F.2d 516, 518 (11th Cir.) ("Common law damages awards are one form of state regulation and, as such, are 'requirements' within the meaning of section 136v."), *petition for cert. filed,* 61 U.S.L.W. 3836 (U.S. June 7, 1993) (No. 92–1938).

Under the test enunciated in *Cipollone,* New York tort liability with respect to Plaintiff's strict liability claim would constitute a requirement either different from or in addition to those requirements contained in sec-

**5.** Unlike the circumstances in *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 251–52, 104 S.Ct. 615, 622–63, 78 L.Ed.2d 443 (1984), where Congress was silent with respect to the Atomic Energy Act's preemptive effect on state-law remedies, the MDA contains an express preemption provision.

**6.** No legally significant distinction exists between the "any requirement" component of section 360k(a) and the "no requirements or prohibitions" language of the PHCSA. "Both seem equally emphatic: '[n]o requirements or prohibitions' is just another way of saying a '[s]tate shall not impose ... any requirements." *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 371 (7th Cir.1993).

tion 360k or regulations promulgated by the FDA. Despite this apparently harsh outcome, the Court is of the opinion that *Cipollone* mandates such a result.

■ Plaintiff's claim of negligent manufacture is not, however, preempted. The Court understands Plaintiff to allege that Zimmer did not comply with its own FDA approved manufacturing process.

Plaintiff complains that insufficient discovery has been had concerning Zimmer's alleged noncompliance with the FDA's manufacturing specifications. (Pl.'s Mem. at 27.) Zimmer appears to concede that Reiter has not completed her discovery, although Zimmer contends that Reiter has had an adequate opportunity. (Zimmer's Reply Mem. at 15.) The parties, therefore, may proceed with discovery on the subject of Zimmer's compliance or noncompliance with the specifications set forth in the FDA's approval of the bone cement.

*Summary*

For the foregoing reasons, Zimmer's motion for summary judgment, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, is granted in part and denied in part. Plaintiff's motion to stay this Court's determination of Zimmer's motion, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, is denied.

The parties will complete discovery by December 1, 1993. Zimmer may, upon the completion of discovery, renew its motion for summary judgment after conference with the Court.

SO ORDERED.