OPINION OF THE COURT
John A. Milano, J.
In this action to recover damages for the alleged failure of a ventricular lead of a pacemaker defendant Medtronic, Inc. seeks an order granting partial summary judgment dismissing the complaint on the grounds of Federal preemption.
Plaintiff commenced the within action on June 18, 1993 by the service of a summons and complaint against Medtronic, Inc., the manufacturer of a pacemaker and leads. A pacemaker generator model No. 76026, along with a ventricular lead model No. 4004, and an atrial lead model No. 4016 were implanted into plaintiff in May 1989. The pacemaker and leads were removed and replaced on April 27, 1993 due to its alleged failure to properly function. Plaintiff in his complaint alleges four causes of action against Medtronic, Inc. It is alleged that Medtronic, Inc. was negligent in its design, manufacture, testing, inspection, distribution, marketing and sale of the pacemaker and leads, that it was negligent in advising and consulting with the operating physician, and failed to provide proper warnings, and that it was negligent in its failure to provide proper followup and maintenance of the plaintiff following the initial surgery. Plaintiff also alleges causes of action for breach of express and implied warranty, strict products liability, and providing improper aid, assistance and advice regarding the implantation of the pacemaker and leads.
Defendant Medtronic, Inc. served its answer on July 13, 1993 and served an amended answer on July 20, 1993, in which it asserted Federal preemption as an affirmative defense. Defendant also served a demand for a bill of particulars, which plaintiff belatedly responded to on March 21, 1994. Plaintiff thereafter, pursuant to a stipulation, so ordered by the court, dated May 25, 1994, agreed to serve a supplemental bill of particulars setting forth the specific manufacturing or *381 design defects, if any, as regards the pulse generator, the ventricular lead and the atrial lead. Plaintiff, in a supplemental bill of particulars, limited his claims to the ventricular lead model No. 4004, which allegedly fractured or disconnected, causing the pacemaker to fail to function. In view of the plaintiff’s failure to particularize any claims regarding the pacemaker or atrial lead, his claims are limited to the ventricular lead model No. 4004.
Defendant Medtronic, Inc. now seeks an order granting partial summary judgment dismissing plaintiff’s negligence, strict products liability, breach of warranty and failure to warn claims, on the grounds that these claims are preempted by the Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act. (21 USC § 301 et seq. [FFDCA]).
Plaintiff, in opposition, asserts that summary judgment should be denied, as there has been little or no discovery, and that the documents submitted by defendant are photocopies and not originals. Plaintiff also asserts that his claims are not barred by the Federal statutes.
Plaintiff’s claim regarding the need for discovery is without merit. The documents relating to the premarket approval of the subject medical device have long been made available for public disclosure by the Food and Drug Administration (FDA). (See, 21 CFR part 814.) These documents, therefore, are not solely within defendant’s possession, and plaintiff has been aware of the Federal preemption defense for well over a year. Moreover, as plaintiff does not allege that defendant failed to follow FDA procedures or that the FDA withdrew its approval of the subject device, further discovery is not warranted. The affidavit and documentary evidence submitted herein is sufficient for the court to determine whether plaintiff’s claims are barred by the Medical Device Amendments to the Federal Food, Drug, and Cosmetic Act. The defense of preemption constitutes a challenge to this court’s subject matter jurisdiction, and can be raised at any time. (See, Thomas v Best, 104 AD2d 37; Marine Midland Bank v Bowker, 89 AD2d 194, affd 59 NY2d 739; Lacks v Lacks, 41 NY2d 71; Gomez v Gomez, 86 AD2d 594, affd 56 NY2d 746.)
At issue is the preemptive effect of the FFDCA (21 USC § 301 et seq.), and its amendments known as the Medical Device Amendments of 1976 (MDA) (21 USC § 360c et seq.), on plaintiff’s common-law tort claims. Under the MDA, the FDA *382 is required to classify all medical devices into one of three categories based on the degree of regulation necessary to assure safety and effectiveness. All three classes are subject to "general controls”, including labeling requirements and good manufacturing practices. (See, 21 USC §§ 360c, 360i, 360j.) Class III devices require that the FDA grant premarket approval (PMA) prior to sale, because they present a potential unreasonable risk of illness or injury. (21 USC § 360c [a] [1] [c] [ii] [II].)
It is undisputed that the pacemaker and the atrial and ventricular leads which were implanted into plaintiff in May 1989 are class III medical devices. (21 CFR 870.3610, 870.3680 [b].) The only device at issue herein is the ventricular lead model No. 4004. The FDA granted premarket approval to defendant for the No. 4004 lead, pursuant to a supplemental PMA application, on February 10, 1989. Defendant had previously obtained a PMA for another lead model No. 4003, on July 29, 1986. The model No. 4003 pacing lead is an endocardial, tined, ventricular packing lead, and model No. 4004 is a bipolar version of this lead.
The Supremacy Clause of the Constitution invalidates State laws that interfere with, or are contrary to Federal law. (US Const, art VI, cl [2]; Cipollone v Liggett Group, 505 US 504.) A Federal statute will supersede State tort remedies only if that is the clear and manifest purpose of Congress. (Cipollone v Liggett Group, supra, 505 US, at 516.) Congress may express its intent explicitly in the language of the statute, or impliedly by passing a regulatory scheme that extensively covers the field of regulation. (See, Jones v Rath Packing Co., 430 US 519; Fidelity Fed. Sav. & Loan Assn. v De La Cuesta, 458 US 141.)
Turning now to the statute at issue, section 360k of the MDA provides, in pertinent part, that:
"[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
"(1) which is different from, or in addition to, any requirement applicable under this Act to the device, and
"(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act.” (21 USC § 360k [a].)
The existence in the MDA of an express preemption provision, thus, precludes reliance on the doctrine of implied preemp *383 tion. (See, Reiter v Zimmer, Inc., 830 F Supp 199; Fogal v Steinfeld, 163 Misc 2d 497 [Sklar, J.]; Michael v Shiley, Inc., 1994 WL 59349 [ED Pa]; see also, Stamps v Collagen Corp., 984 F2d 1416 [5th Cir], cert denied — US —, 114 S Ct 86; King v Collagen Corp., 983 F2d 1130 [1st Cir], cert denied — US —, 114 S Ct 84; Slater v Optical Radiation Corp., 961 F2d 1330 [7th Cir], cert denied — US —, 113 S Ct 327.)
The FDA has promulgated regulations implementing section 360k. Under 21 CFR 808.1 (d): "state or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act”. In addition, 21 CFR 808.1 (b) provides that section 360k applies to any State or local requirement "having the force and effect of law (whether established by statute, ordinance, regulation or court decision)”. The only regulation specifically pertaining to pacemaker leads appears at 21 CFR 870.3680 (b). Inasmuch as this section only identifies pacemaker leads as a "permanent pacemaker electrode”, and classifies such devices as a class III device requiring premarket approval, the court is required to determine whether there are other requirements pertaining to the pacemaker leads within the meaning of section 360k that would preempt State law claims.
State tort claims involving class III medical devices have been litigated almost exclusively in the Federal courts. Several courts have ruled that State law claims based upon malfunctioning class III medical devices are preempted by the MDA. (Stamps v Collagen Corp., supra; King v Collagen Corp., 983 F2d 1130, supra; Michael v Shiley, Inc., 1994 WL 59349, supra; Kemp v Pfizer, Inc., 835 F Supp 1015 [ED Mich 1993]; Bravman v Baxter Healthcare Corp., 842 F Supp 747 [SD NY 1994].) These courts determined that under the premarket approval process the FDA approved a class III device only if it found that the applicant had made a showing of reasonable assurance that the device was safe and effective, that the methods used in manufacturing, processing and packing conformed to requirements, that the proposed labeling was not false or misleading in any particular, and that the device conformed to a performance standard in effect. (21 USC § 360e [d] [2].) These courts have thus concluded that the rigorous premarket approval for class III devices constitute a specific regulation which preempts State tort claims.
*384 In cases where the medical device has been cleared for marketing pursuant to the MDA § 510 (k) premarket notification procedure (21 USC § 360k) the courts have split over whether State tort claims are preempted by the MDA. (Oja v Howmedica, Inc., 848 F Supp 905 [D Colo 1994] [no preemption]; Larsen v Pacesetter Sys., 74 Haw 1, 837 P2d 1273 [no preemption]; Ginochio v Surgikos Inc., 864 F Supp 948 [ND Cal 1994] [no preemption class II device]; cf., Mendes v Medtronic, Inc., 18 F3d 13 [1st Cir 1994].) The Supreme Court, New York County, in Fogal v Steinfeld (supra) declined to follow Mendes (supra), as the medical device therein was not subject to premarket approval and only cleared pursuant to section 510 (k). The Fogal court denied Medtronic’s motion to amend its answer to include the defense of Federal preemption.
In the case at bar, plaintiff's only articulated claim involves the pacemaker’s ventricular lead, model No. 4004. This lead obtained premarket approval by the FDA, following the submission of a PMA supplement. All of the procedures and actions that apply to a PMA application also apply to PMA supplements, with the exception that the information required in a supplement is limited to that needed to support the change. (21 CFR 814.39, 814.20.) The pacemaker lead at issue, therefore, was required to undergo the full premarket approval process, and had, in fact, been given premarket approval by the FDA. The court, therefore, finds that Fogal (supra) is inapplicable to the case at bar.
In order to determine the reach of section 360k, this court must now examine each of plaintiff’s claims in order to determine whether they are, in fact, preempted. (Cipollone v Liggett Group, 505 US, at 524, supra.) New York law recognizes three types of product defects that can expose a manufacturer to liability: (1) the absence or inadequacy of warnings accompanying a product which causes harm; (2) mistakes in manufacturing which render a product dangerous and causes harm, and (3) design defects. (86 NY Jur 2d, Products Liability, §§ 72, 73, 75.) In the case at bar plaintiff alleges that the Medtronic pacemaker lead model No. 4004 was defective in all three ways and liability is predicated upon theories of negligence, and breach of warranty, as well as strict liability in tort.
Plaintiff’s claims of negligence in the design, manufacture, marketing and sale of the pacemaker lead No. 4004 are preempted. "If the MDA does nothing else, it regulates the *385 design, manufacturing, sale and marketing of class III medical devices in an extensive way. The MDA does this through the packaging and labeling requirements which directly affect the marketing and sale of the product. The same requirements also affect the design and manufacture of the product in that these processes must be approved by the FDA and described in the product’s packaging and labeling.” (King v Collagen Corp., 983 F2d, at 1136, supra.) Thus, as the FDA tells the manufacturer what labeling, packaging, design and manufacture are acceptable to permit a claim for negligence would implicitly reject the FDA’s standards and thereby impose a higher standard in contravention of the MDA.
Plaintiffs strict liability claims are also preempted. Strict liability would impose requirements related to the safety and effectiveness, contrary to the determinations made by the FDA under the MDA.
In addition, the failure to warn claims are preempted, as such claims challenge the adequacy of the labeling and packaging specifically approved by the FDA. A finding of failure to warn would require an implicit finding that the FDA-approved labels and packaging were insufficient, and would mean imposing labels and packages "different from or in addition to” those required by the MDA. (See, King v Collagen Corp., supra; Stamps v Collagen Corp., supra; Ministry of Health v Shiley Inc., 858 F Supp 1426, 1438; Bravman v Baxter Healthcare Corp., 842 F Supp 747, supra; Reiter v Zimmer, Inc., 830 F Supp 199, supra.) However, the MDA would not preempt plaintiffs claim that the manufacturer’s employees negligently failed to warn plaintiffs physician. Such a claim is based upon the employee’s alleged failure to transmit the FDA-approved warnings to the physician, and not upon any additional or different warnings. The FDA neither controls nor regulates the behavior and speech of a manufacturer’s employee. The court, however, makes no determination at this time as to whether defendant’s employees owed any such duty to the plaintiff.
The court, therefore, finds that plaintiffs claims based on negligence, strict products liability, and failure to warn, as regards the ventricular lead model No. 4004 are preempted.
The court, however, finds that plaintiffs breach of warranty claims are not preempted. 21 CFR 808.1 (d) (1) specifically provides that section 521 (a) of the Act (21 USC § 360k [a]) "does not preempt State or local requirements of general *386 applicability where the purpose of the requirement relates * * * to other products in addition to devices (e.g., requirements such as * * * the Uniform Commercial Code (warranty of fitness))”. In addition, 21 CFR 805.3 (h) and 805.10 (g) and (h) appear to recognize express and implied warranties "under contract or state law” relating specifically to pacemakers and pacemaker leads. Moreover, the Supreme Court, in Cipollone (505 US, at 525, at 2622, supra) held that an express warranty was not preempted since it was not " 'imposed under State law,’ ” but rather was "imposed by the warrantor.” This court, therefore, is in agreement with the courts in Ministry of Health v Shiley, Inc. (858 F Supp 1426, supra) and Fogal v Steinfeld (supra), and declines to follow King v Collagen Corp. (983 F2d 1130, supra), Talbott v C. R. Bard Inc. (865 F Supp 37 [D Mass 1994]), and Martello v Ciba Vision Corp. (42 F3d 1167 [8th Cir 1994]) to the extent that these courts found that the warranty warranty claims were preempted.
In view of the foregoing, defendant’s motion for partial summary judgment is granted to the extent that plaintiffs claims against Medtronic, Inc. for negligence, strict products liability, and failure to warn are preempted, and, therefore, are dismissed. Defendant’s request to dismiss the breach of warranty claims is denied. Defendant’s request to dismiss the failure to warn claim is granted in part, as regards any claims relating to labeling or packaging, and is denied as to any allegedly improper warnings made by defendant’s employees in consultation with plaintiffs operating physician.