ESTATE OF Lyle L. LeMAY by the Personal Representative Dolores A. LeMAY, and Dolores A. LeMay, individually, Plaintiffs,

v.

ELI LILLY & CO., Cardiac Pacemakers, Inc., et al., Defendants.

Civ. A. No. 93–C–0142.

United States District Court, E.D. Wisconsin.

March 15, 1995.

Paul Gagliardi, Salem, WI, for plaintiff.

Charles H. Bohl and Pamela M. Schmidt, Milwaukee, WI, for all defendants.

Patricia K. McDowell, Milwaukee, WI, for The Prudential Ins. Co. of America.

## DECISION AND ORDER ADOPTING IN PART MAGISTRATE JUDGE'S RECOMMENDATION

REYNOLDS, District Judge.

Plaintiffs brought this action for negligence and strict liability for the alleged malfunction of the lead wires used to connect an Automatic Implantable Cardioverter Defibrillator ("AICD") to Lyle LeMay's heart. On October 12, 1994, a United States magistrate judge for the Eastern District of Wisconsin recommended that this court enter summary judgment against plaintiffs and dismiss this action with prejudice. Plaintiffs filed timely objections to portions of the magistrate judge's recommendation. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule § 13.03(c) (E.D.Wis.), this court conducts a *de novo* review of the record. Accordingly, this court adopts the magistrate judge's well-reasoned recommendation as to all claims except plaintiffs' negligent manufacturing claim, on which additional discovery may be conducted.

■ Preemption is appropriate when a statute, ordinance, regulation, or court decision subjects a medical device to a requirement "different from, or in addition to" any specific requirement established by the Food and Drug Administration ("FDA"). 21 U.S.C. § 360k(a); 21 C.F.R. § 808.1(b). While the Seventh Circuit has not squarely addressed the issue of whether negligent manufacturing claims are preempted by the Medical Device Amendments ("MDA") to the Federal Food, Drug & Cosmetic Act, 21 U.S.C. § 360c *et seq.*, it has noted that the preemption principle "is limited to efforts by states to impose sanctions for compliance with federal regulations" and "does not affect cases charging negligence in the implantation

or removal of a lens, or complaining of contamination of the lens." *Slater v. Optical Radiation Corp.*, 961 F.2d 1330, 1334 (7th Cir.1991) (Posner, J.), *cert. denied*, — U.S. —, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992).

Moreover, several district courts have held that negligent manufacturing claims are not preempted by the MDA. A district court in California emphasized that while most of the plaintiffs' claims were preempted,

the MDA would *not* preempt claims that the manufacturer *negligently failed to comply with the FDA's regulations,* since a finding of wrongdoing would merely impose those regulations already imposed by the statute, and would not be "different from or in addition to" those imposed by the MDA.

*Ministry of Health v. Shiley, Inc.*, 858 F.Supp. 1426, 1439 (C.D.Cal.1994). Another district court held that the plaintiff's negligent manufacturing claim was not preempted by the MDA because the plaintiff alleged that the defendant did not comply with its own FDA-approved manufacturing process. *Reiter v. Zimmer, Inc.*, 830 F.Supp. 199, 204 (S.D.N.Y.1993). After ruling that the negligent manufacturing claim was not preempted, the *Reiter* court allowed the plaintiff an opportunity to conduct discovery on the subject of the defendant's compliance or noncompliance with FDA specifications, even though the defendant asserted that the plaintiff already had an adequate opportunity to conduct discovery on this issue.

As in the *Reiter* case, plaintiffs in the case before this court have alleged that defendants' medical device (the AICD system) was not manufactured in compliance with FDA specifications. Because defendants' summary judgment motion raised purely the legal issue of preemption, and because the negligent manufacturing claim is not preempted, plaintiffs should now have the opportunity to conduct discovery. This is particularly so, in light of the magistrate judge's scheduling order of January 21, 1994, which stated: "The plaintiffs may engage in discovery necessary to respond to the defendants' pending motion for summary judgment; all non-summary judgment related

discovery is stayed until further order of the court." The magistrate judge expressly intended to limit the scope of discovery for summary judgment purposes.

In support of their argument that negligent manufacturing claims are preempted, defendants rely on a First Circuit case, *Mendes v. Medtronic, Inc.*, 18 F.3d 13 (1st Cir.1994), which held that the plaintiff's negligent manufacturing claim was preempted by FDA regulations on good manufacturing practices because the trier of fact could find liability on the plaintiff's claim by applying standards differing from the FDA's. However, the *Mendes* court also cited the *Slater* and *Reiter* decisions and stated: "We express no opinion on whether products liability claims are preempted only if the manufacturer complied with applicable FDA regulations." *Id.* at 19–20. Similarly, in a recent Eighth Circuit decision, the court explained in *dicta* that the plaintiff's claim would not have been preempted if, like the *Reiter* case, the plaintiff had alleged noncompliance with federal regulations. *Martello v. Ciba Vision Corp.*, 42 F.3d 1167, 1169 (8th Cir.1994). In the case at bar, plaintiffs allege that Lyle LeMay's AICD system was not manufactured in compliance with the specifications set forth by the FDA, and they should have the opportunity to conduct discovery on that claim. However, because plaintiffs properly assert their negligent manufacturing claim for the first time in their response to defendants' motion for summary judgment, they should amend their complaint to clarify this claim.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

**IT IS FURTHER ORDERED** that plaintiffs shall amend their complaint to clarify their negligent manufacturing claim on or before April 1, 1995.

**IT IS FURTHER ORDERED** that the parties shall complete discovery by July 1, 1995.

**IT IS FURTHER ORDERED** that defendants, upon the completion of discovery, may renew their motion for summary judgment and submit such motion on or before August 1, 1995.

## RECOMMENDATION TO DISTRICT JUDGE

GOODSTEIN, United States Magistrate Judge.

On January 21, 1993, Lyle and Delores LeMay filed this suit in the Kenosha County Circuit Court, Kenosha County, Wisconsin, for negligence and strict liability for the alleged malfunction of an automatic implantable cardioverter defibrillator (AICD). On February 12, 1993, this case was removed by the defendants to this court pursuant to 28 U.S.C. §§ 1441 and 1332. On October 7, 1993, the estate of Lyle LeMay by the Personal Representative Dolores A. LeMay was substituted for plaintiff Lyle LeMay (hereinafter, the plaintiff will be referred to in the singular). This case was randomly assigned to this court for all pretrial processing. There has not been consent of the parties to magistrate judge jurisdiction and therefore this court has limited jurisdiction. 28 U.S.C. § 636(b)(1)(B). Venue is proper in the Eastern District of Wisconsin. Currently pending before this court is motion for summary judgment of defendants Eli Lilly and Company (hereinafter "Lilly") and Cardiac Pacemakers, Inc. (hereinafter "CPI").

### I. Background

The facts which appear below are uncontested for purposes of summary judgment, *see* Local Rule 6.05(b)(1) and (2) (E.D.Wis.):

1. In September of 1990, Lyle LeMay underwent surgery for heart ailments. During the surgery physicians inserted an Automatic Implantable Cardioverter Defibrillator (AICD) which was hooked up to previously implanted lead wires (hereinafter "leads") attached to LeMay's heart. The AICD system functions by transmitting electric impulses to the heart through the leads.

2. Both the AICD unit and the leads were manufactured and sold by the defendant CPI, a wholly owned subsidiary of the defendant Lilly. The leads received by LeMay were Models 4312 and L67.

3. All components of the AICD system, including the leads, are Class III medical devices within the meaning of the Medical Device Amendments (hereinafter "MDA") to the Federal Food, Drug & Cosmetic Act and are thus subject to these provisions.

4. As part of the premarket approval process for the AICD system required by the MDA, CPI submitted to the FDA a copy of a study of the safety and effectiveness of the leads. CPI also submitted a copy of the proposed packaging and labeling materials for the leads, including the Physicians Manual for the use of the Model 4312 lead and the Instructions for Use of the Model L67 lead. CPI received approval to market the leads from the FDA subject to the conditions of approval specified in the premarket approval order for the device.

5. On or about January 7, 1992, a malfunction in LeMay's AICD system was discovered and was attributed to fractures in two of the leads.

6. LeMay passed away in March of 1993 as a result of his heart ailments.

## II. Analysis

■ A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. *See Celotex Corp. v. Catrett* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[M]aterial" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ The movant bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Rule 56(c) Fed. R.Civ.P.; *see Adickes v. S.H. Kress & Co.,*

398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *see also Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2552 (the moving party has the responsibility of informing the court of portions of the record or affidavits that demonstrate the absence of a triable issue). In addition, the moving party may meet its burden of showing an absence of a material issue by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513; *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988); *Spring v. Sheboygan Area School Dist.,* 865 F.2d 883, 886 (7th Cir.1989). If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

■ The defendants assert that summary judgment is appropriate because the state law claims for damages advanced by the plaintiff in this case are preempted by the Medical Device Amendments (hereinafter "MDA") to the Federal Food, Drug & Cosmetic Act (hereinafter "FDCA"). 21 U.S.C. § 360c et. seq. (1988). Under the MDA regulatory scheme, medical devices intended for human use are classified as Class I, II or III devices. *See Tarallo v. Searle Pharmaceutical, Inc.,* 704 F.Supp. 653, 656 (D.S.C.1988). Class III devices require extensive premarket approval designed to provide a "reasonable assurance of ... safety and effectiveness" for medical devices which are the most dangerous. 21 U.S.C. §§ 360c(a)(1)(C) & 360e(e) & 360i(a). Premarket approval under the MDA requires applicants to submit an application detailing: 1) extensive safety testing data; 2) the contents and operation of the device; 3) a description of methods used to manufacture, process, package and install the device; 4) samples of the device; 5) proposed labelling for the device; and 6) all other information requested by the FDA. 21 U.S.C. § 360e(c)(1). Once the device is ap-

proved, FDA regulations prohibit the device from being manufactured, packaged, stored, labeled, distributed, or advertised in a manner inconsistent with the conditions of approval. 21 C.F.R. § 814.80. The FDA retains the power to monitor the device and withdraw approval if the device becomes unsafe. 21 U.S.C. §§ 360e(e)(1)–(3) & 360i.

■ The doctrine of federal preemption is grounded in the Supremacy Clause of the Constitution which dictates that federal law "shall be the supreme Law of the Land; and the judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State notwithstanding." U.S. Const. art. VI, cl. 2. State laws which conflict with federal laws and regulations are therefore preempted, if Congress so intended. *Cipollone v. Liggett Group,* —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). Congress' intent to preempt state law may be explicit in the language of the statute, it may be implied by occupation of an entire field of regulation, or it may be implied when there is a conflict between state and federal law. *Abbot v. American Cyanamid Co.,* 844 F.2d 1108, 1111 (4th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). The MDA contains an express preemption provision which is as follows:

(a) no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement-

(1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k; *see also Stamps v. Collagen Corp.,* 984 F.2d 1416, 1420 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993) (finding that the express preemption provision in the MDA precludes any discussion regarding implied preemption). As the MDA contains an express preemption provision, the main issue before this court is the interpretation of that provision.

The FDA is the agency authorized to promulgate regulations implementing the MDA, 21 U.S.C. § 371(a), and, therefore, the court looks to those regulations for an interpretation of the statutory language. None of the parties question the validity of the FDA regulations but, only their interpretation. 21 C.F.R. § 808.1(d) provides that state requirements are preempted only when the FDA has established "specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements."

■ In response to defendants, plaintiff first argues that the FDA has not established specific requirements applicable to the AICD and therefore state tort claims are not preempted by the MDA. However, the premarket approval scheme in the MDA which imposes specific requirements regarding labeling, manufacturing, design and other aspects of the device, has been held to be a specific requirement applicable to Class III medical devices. *See King v. Collagen Corp.,* 983 F.2d 1130, 1134 (1st Cir.), *cert. denied* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993); *Stamps v. Collagen Corp.,* 984 F.2d at 1421–22. Therefore, there were specific FDA requirements imposed upon the AICD and leads in this case pursuant to the MDA premarket approval scheme.

The plaintiff next argues that the state tort claims are not preempted by the MDA because the claims are not "requirements applicable to a device" within the meaning of the MDA preemption provision. Specifically, the plaintiff argues that the state tort claims fall under the "general applicability" exemption from preemption found in 21 C.F.R. § 808.1(d)(1) because the purpose of the state claims relate to other products in addition to devices. The plaintiff also relies on an opinion of the FDA Commissioner and a 1984 advisory opinion of the Associate Commissions for Regulatory Affairs of the FDA which stress that the FDA preempts only state or local requirements which directly and specifically relate to the medical device,

not those which relate only incidentally. In addition, the plaintiff cites to *Callan v. G.D. Searle & Co.*, 709 F.Supp. 662, 667–68 (D.Md. 1989), for the proposition that the term "requirement" refers to legislative and administrative "programs" which govern the sale and distribution of devices, not state common law.

■ A state requirement related to a medical device can be a requirement established by statute, ordinance, regulation, or court decision. 21 C.F.R. § 808.1(b); *see also San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) (stating that an award of damages is an effective means of state regulation). The federal appellate courts which have addressed the issue of preemption of state tort claims have held that state tort law is a "requirement" and thus subject to preemption under the MDA. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 16 (1st Cir.1994); *Stamps v. Collagen Corp.*, 984 F.2d at 1420–1421; *Slater v. Optical Radiation Corp.*, 961 F.2d 1330, 1333 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992). In *Callan,* the only case cited by the plaintiff as support, the district court held that state law was not preempted by the approval of the IUD as a prescription drug by the FDCA. *Callan,* 709 F.Supp. at 665. However, in that case the IUD was a prescription drug and not subject to the MDA, thus any discussion by the court as to whether the MDA would preempt state tort law if it applied is merely dicta. Furthermore, as indicated above, all of the circuits which have directly faced the issue subsequent to *Callan* have reached the opposite conclusion.

As state law can be a requirement preempted by the MDA, the court will next analyze the plaintiff's claims to determine whether successful litigation of those claims would impose requirements which differ from or add to the FDA requirements or which relate to the safety or effectiveness of the device so as to be preempted by the MDA. In the first cause of action, the plaintiff alleges that the defendants were negligent in the following ways: designing, processing, manufacturing, and distributing the AICD system; failing to adequately inspect the AICD System; by failing to warn of the defect when it became known; and failing to provide adequate and sufficient instruction and warning for the use and maintenance of the AICD system. In the second cause of action, the plaintiff alleges that the AICD system was designed, manufactured, distributed and sold in a defective condition so as to be unreasonably dangerous.

■ The MDA regulates the safety and effectiveness of Class III devices such as the AICD system and includes approval of labeling. In this case, as part of the premarket approval process for the AICD system, CPI submitted to the FDA a study regarding the safety and effectiveness of the leads as well as a copy of CPI's proposed packaging and labeling materials for the leads. The FDA specifically approved the text of the warnings contained in the Physicians Manual and Instructions for Use for the Model 4312 and L67 leads received by LeMay and, in approving the leads, set forth specific conditions of approval. If the plaintiff prevailed on these claims, additional requirements regarding safety, effectiveness, and labeling would be imposed upon the defendants. If the plaintiff prevailed on the strict liability claim, the defendants may be required to redesign the AICD system, remove it from the market or be subject to strict liability, contrary to the determination by the FDA that the AICD system is safe. A jury would not merely be "commenting" that the manufacturer established inadequate and unsafe specifications, as the plaintiff asserts but, rather would be applying standards to the AICD system other than those established by the MDA.

Moreover, the courts interpreting the preemption provision of the MDA have found state tort claims similar to those alleged by the plaintiff to be preempted by the Class III premarket approval requirements. *See King v. Collagen Corp.*, 983 F.2d at 1135–36 (holding that the following claims against a manufacturer of cosmetic medical device were preempted: strict liability; breaches of express and implied warranties of merchantability and fitness for a particular purpose; negligence in the design, manufacture, marketing and sale of the device; misbranding, misrepresentation and failure to warn; and

fraudulently obtaining FDA approval); *Stamps v. Collagen Corp.*, 984 F.2d at 1422 (holding that plaintiffs claims against the manufacturer of antiwrinkle treatment product for defective design, inadequate warnings and negligent failure to warn were preempted by the MDA); *Slater v. Optical Radiation Corp.*, 961 F.2d at 1333 (in a suit for injury to the plaintiffs eye allegedly caused by the implantation and removal of intraocular lenses, the court held that the plaintiffs claims for inadequate clinical testing, defective design of the lens and failure to warn of the lens' dangers were preempted by the MDA); *Kemp v. Pfizer, Inc.*, 835 F.Supp. 1015 (E.D.Mich.1993) (claims against manufacturer of a prosthetic heart valve for negligence, res ipsa loquitur, failure to warn, a continuing duty to warn, strict liability, negligence per se and breaches of implied and express warranties were preempted). The state tort claims are requirements different from or in addition to the requirements established by the FDA and therefore are preempted.

Solely with regard to the plaintiff's claim for negligence in manufacturing the leads, the court notes that a negligence claim against a manufacturer for allegedly violating FDA requirements might not be preempted by the MDA. *See Slater*, 961 F.2d at 1334 (stating that the scope of preemption is limited to efforts by states to impose sanctions for compliance with federal regulations); *Reiter v. Zimmer*, 830 F.Supp. 199, 204 (S.D.N.Y. 1993) (finding that the MDA did not preempt negligence claim against manufacturer for allegedly violating FDA requirements). The MDA preemption is not the sort of blanket preemption as found in ERISA. *Slater*, 961 F.2d at 1334. Although the plaintiff has alleged that the leads which broke were not made according to the specifications established by CPI, the plaintiff's only support for that conclusion are the statements of CPI's expert Michael McClurken that it is possible for leads to be made which are not according to specification. However, McClurken's acknowledgement of this at his deposition is in the nature of an "almost anything is possible" type of statement. Without any substantial factual basis, the plaintiff has not raised a material issue of fact and is thus unable to avoid preemption with regard to this claim.

The plaintiff argues that the defendants are challenging the FDA's interpretation of the MDA and therefore are required to petition the FDA for a revocation of the Commissioner's interpretation before asserting that the plaintiff's claims are preempted. However, as interpreted by the federal courts addressing this issue, the FDA regulations are consistent with preemption and therefore there is no need for the defendants to pursue administrative relief.

The balance of the plaintiff's other arguments relate to public policy and fairness. Although the absence of state tort claim relief may seem unfair, the amendment of the MDA to provide for the preservation of state products liability remedies for injured consumers of Class III medical devices appears to be plaintiff's only avenue for relief in the face judicial interpretation of the MDA and the FDA regulations. *See* Michael E. Petrella, Comment, *License to Maim: Federal Preemption & The Medical Device Amendments of 1976*, 44 Case W.Res.L.Rev. (forthcoming 1994) (discussing how federal interpretation of the MDA preemption provision fails to allow relief for the injured consumer and proposing amendment of the MDA as a solution).

Finally, as the plaintiff's claim of failure to warn is preempted by the MDA, a determination of the appropriate state law standard regarding the obligation to warn or whether LeMay was actually warned is unnecessary and irrelevant. Likewise, plaintiff's claim of strict liability is also preempted and therefore the court need not resolve the issue raised by the defendants as to the appropriate state law to be applied in a strict liability action.

In conclusion, even assuming that all of the plaintiff's state law claims are true, those claims are preempted by the MDA. Thus, there is no genuine issue of material fact upon which relief can be granted and summary judgment is appropriate as a matter of law.

**IT IS THEREFORE RECOMMENDED** that the motion of the defendants Eli Lilly &

Co. and Cardiac Pacemakers, Inc. for summary judgment be granted. Parenthetically, it appears that the potential liability of the other defendants is derivative to that of Lilly and CPI; therefore, if summary judgment is granted, plaintiff's entire complaint and this action would be subject to dismissal.

Any objection to this recommendation must be filed with the Clerk of Court in duplicate within ten days of this date. Failure to file an objection within the specified time waives the right to appeal the district court's order on all factual and legal issues.

Dated at Milwaukee, Wisconsin, this 12th day of October, 1994.