**Dorothy KOZMA and Joseph Kozma, Plaintiffs,**

v.

**MEDTRONIC, INC., Defendant.**

No. 2:95–CV–9–TS.

United States District Court,
N.D. Indiana,
Hammond Division.

April 30, 1996.

Gerald M. Bishop, Merrillville, IN, for Plaintiffs.

Timothy Woods, South Bend, IN and Thomas Parker, Akron, OH, for Defendant.

## MEMORANDUM AND ORDER

SPRINGMANN, United States Magistrate Judge.

The Plaintiffs, Dorothy and Joseph Kozma, brought this action against the Defendant after Mrs. Kozma underwent surgery to replace her pacemaker. The Defendant, Medtronic, Inc., designed and manufactured the pacemaker and leads at issue in this case. In their Complaint, the Plaintiffs assert claims for negligent manufacture, strict liability/failure to warn, and breach of implied and express warranties against the Defendant. Medtronic counters and asserts that all of the Plaintiffs' claims are preempted by the Medical Device Amendments of 1976 (MDA) to the Federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 321–394. In addition to these claims, the Plaintiffs assert that Medtronic converted the defective pacemaker after doctors surgically removed it from the Plaintiff's body.

The Court holds that the Plaintiffs' claim for negligent or defective manufacture is not preempted insofar as the Plaintiffs are asserting that the pacemaker failed to meet federal safety and performance regulations. The Plaintiffs, however, have not identified the factual basis for its claim of adulteration or defective manufacture. Nonetheless, the Court DENIES the Defendant's Motion for Summary Judgment because the evidence crucial to making out a claim for adulteration or defective manufacture has not, to this point, been subject to discovery by the Plaintiffs. The Court also holds that the Plaintiffs' claims for breach of express warranties are not preempted. Finally, the Plaintiffs have presented facts sufficient to survive summary judgment with respect to their conversion claim.

## I. ISSUES

This case presents four issues for the Court to decide. The first issue asks whether the Medical Device Amendments to the FDCA preempt the Plaintiffs' claims for adulteration, negligent manufacture, failure to warn and breach of implied and express warranties. The Defendant asserts that all of these claims are preempted by the MDA. Because the Food and Drug Administration (FDA) gave premarket approval to the allegedly defective pacemaker, the Defendant argues that the pacemaker should not be subject to different standards imposed by the Plaintiffs' claims. The Plaintiffs, recognizing the substantial authority upon which the Defendant's argument rests, have clarified their legal theory and argue that the particular pacemaker involved in this case was a "lemon." The Plaintiffs do not argue that the Defendant should have met design and warning standards different than those imposed by the FDA. Instead, the Plaintiffs argue that the Defendant failed to meet the federal standards when it manufactured this particular pacemaker. In other words, the Plaintiffs argue that the pacemaker involved in this case was an adulteration of the FDA-approved model.

Finding that the Plaintiffs have solid legal footing on their claims insofar as they allege adulteration, the Court turns to the second issue: Whether the Plaintiffs have presented evidence of adulteration sufficient to withstand summary judgment against them. The Defendant has put forth extensive evidence of their compliance with FDA regulations in the design and manufacture of the model of pacemaker involved in this case. The Plaintiff has not been able to identify the particular defect in the pacemaker nor any evidence of failing to meet FDA regulations in the manufacture of the pacemaker. Instead, they point out that the Defendant has control over the Plaintiff's pacemaker and has never turned it over for testing and inspection. Although the Plaintiffs cannot present facts sufficient to show a triable issue, the Plaintiffs argue that summary judgment should not be granted before adequate discovery is conducted.

The third issue asks whether the Plaintiffs' claim for breach of express warranties survives preemption by the MDA. The fourth decides whether or not the Defendant is entitled to summary judgment on the Plaintiffs' claim for conversion.

## II. FACTS

On April 10, 1989, Dorothy Kozma underwent heart surgery for the purpose of implanting a pacemaker manufactured by Medtronic, Inc. In 1993, Mrs. Kozma again faced heart problems caused by the alleged failure of her pacemaker or its leads. On November 30, 1993, Mrs. Kozma underwent a second heart surgery for the purpose of removing the original pacemaker and implanting a replacement.

After the surgery, Medtronic took possession of Mrs. Kozma's original pacemaker. The Plaintiffs demanded that Medtronic return the pacemaker. To this date, the Defendant has not done so. On December 16, 1994, the Plaintiffs filed the present suit in Indiana state court. In a letter dated December 21, 1994, the Defendant offered to return the pacemaker to the Plaintiffs on condition that the Plaintiffs agree not to do

destructive testing of the pacemaker and agree to share the results with the Defendant. The Defendant received service of the pending case on December 22, 1994. For whatever reason, the parties have not yet reached agreement on the circumstances under which the pacemaker will be turned over for inspection by the Plaintiffs.

The pacemaker at issue in this case included two components: a pulse generator and a lead. The particular pacemaker removed from the Plaintiff's body was "Medtronic's CapSure® Model No. 4004, bipolar, endocardial, tined, transvenous pacing lead ..., and Medtronic's Activitrax® II Model No. 8412 single chamber, multi-mode, programmable, lithium-powered, hermetically sealed, implantable pulse generator."[1] (Def.'s Mem. Supp. Mot. Summ. J. at 2.) The pacemaker was subject to regulation by the FDA because it is a medical device intended for human use. 21 U.S.C. § 360c(a)(1).

Pursuant to the MDA, the Food and Drug Administration classifies each medical device intended for human use into one of three classes based on the degree of regulation necessary to assure safety and effectiveness. 21 U.S.C. § 360c. Class I devices generally pose little or no threat to public safety and health. Therefore, they are subject to only general controls on manufacturing processes. Class II devices are more complex than Class I devices and are subject to special controls at the discretion of the FDA. Those special controls include performance standards, post-marketing surveillance, patient registries, recommendations and guidelines. *See* 21 U.S.C. § 360c(a)(1)(B).

The FDA classified the pacemaker and leads at issue in this case as a Class III medical device. Class III devices are used in "supporting or sustaining human life." 21 U.S.C. § 360c(a)(1)(C)(ii)(1). The FDA must approve Class III devices before the manufacturer can sell the devices to the public, a process known as "premarket approval." 21 U.S.C. § 360c(a)(1)(C). The FDA uses the premarket approval process to determine "the safety and effectiveness" of a device

---

1. The Plaintiffs further identify the lead as a Model 400458 and the pulse generator as having

the serial number QE2109305H. (Pls.' Am. Compl. ¶ 5).

under the conditions "prescribed, recommended, or suggested" in its labeling. 21 U.S.C. § 360c(a)(2). The application for pre-market approval must include samples of the device identifying its components, a description of the manufacturing process, data on safety and effectiveness, copies of all proposed labeling, and any other information the FDA requests. 21 U.S.C. § 360e(c); *see also* 21 C.F.R. § 814.20. The application is referred to a panel of qualified experts who study the device and recommend its approval or disapproval. 21 U.S.C. § 360e(c)(2). Finally, the FDA retains the right to withdraw its approval if it finds that a device previously approved is not safe and effective. 21 U.S.C. § 360e(e).

The FDA gave premarket approval to both the pulse generator and leads at issue in this case. The FDA approved the premarket approval application for the pulse generator on July 15, 1988. (Def.'s Mot. Summ. J., Ex. G.) In addition, the FDA approved the premarket approval application for the leads on February 10, 1989. (Def.'s Mot.Summ. J., Ex. C.)

## III. DISCUSSION

### A. Preemption Generally

Federal preemption of state law arises from Article VI of the Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Under this authority, any state law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422 (1992). "Whether federal law preempts a state law establishing a cause of action is a question of congressional intent." *Hawaiian Airlines, Inc. v. Norris,* — U.S. —, —, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203, 211 (1994). A court must look to "the text and structure of the statute at issue" in order to discern Congress's intent with respect to preemption. *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387, 396 (1993); *Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617, 120 L.Ed.2d at 422–23. "If

the statute contains an express preemption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Easterwood,* 507 U.S. at 664, 113 S.Ct. at 1737, 123 L.Ed.2d at 396. To determine congressional intent with respect to the MDA's preemption of state common law causes of action, the Court will now turn to the MDA's express preemption clause.

### B. The MDA's Preemption Clause

In this case, the Defendant relies on the express preemption clause contained in the Medical Device Amendments, which states:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) *which is different from, or in addition to, any requirement applicable under this chapter to the device* and,
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a) (emphasis supplied).

In *Mitchell v. Collagen Corp.,* 67 F.3d 1268 (7th Cir.1995), the court interpreted the preemption clause of the MDA. Specifically, the court considered whether the "any requirement" language found in the statute preempted the Mitchells' state common law claims. The court grounded its analysis on the Supreme Court's decision in *Cipollone,* which interpreted the "any requirement" language in the preemption clause of the Public Health Cigarette Smoking Act of 1969. In *Cipollone,* the Supreme Court held that Congress's use of the words, "any requirement," revealed its intent to preempt state common law claims as well as regulatory or statutory enactments of state legislative bodies. *Cipollone,* 505 U.S. at 522–23, 112 S.Ct. at 2620, 120 L.Ed.2d at 426–27. The Seventh Circuit analogized the Supreme Court's reasoning in *Cipollone* to support its conclusion with respect to the similar language found in the MDA. The court held that the phrase "any

requirement" in 21 U.S.C. § 360k(a) encompassed "at least some" state law causes of action within the statute's preemptive scope. *Id.* at 1276.

Applying these principles to the Mitchells' claims, the court concluded that the MDA preempted several of the state common law causes of action. Specifically, the court held that the products liability claims based on strict liability and negligent design were preempted, as well as the claims for fraud, misrepresentation, and the claims based on implied warranties. *Id.* at 1280–84.

### C. Products Liability, Failure to Warn and Breach of Implied Warranties

■ The court held that the MDA preempted the products liability and failure to warn claims because those claims would add requirements "different from, or in addition to," those imposed under the MDA and the premarket approval process. *Id.* at 1280–81. Likewise, the court held that the MDA preempted the plaintiffs' claims for breach of implied warranties. *Id.* at 1284. In so holding, the court aligned itself with the holdings of several cases from other circuits. *See Michael v. Shiley, Inc.*, 46 F.3d 1316, 1324–25 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 67, 133 L.Ed.2d 29 (1995); *Martello v. Ciba Vision Corp.*, 42 F.3d 1167, 1168–69 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1422 & n. 5 (5th Cir.) (failure to warn, defective design and defective manufacturing claims), *cert. denied,* 510 U.S. 824, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *King v. Collagen Corp.*, 983 F.2d 1130, 1135–36 (1st Cir.) (op. of Torruella, J., joined by Aldrich and Campbell, JJ.), *cert. denied,* 510 U.S. 824, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993); *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 18–19 (1st Cir.1994); *Lohr v. Medtronic, Inc.*, 56 F.3d 1335, 1347–52 (11th Cir.1995) (holding, with respect to Class III device that had not undergone premarket approval process, that negligent design and strict liability claims were not preempted, but that MDA's manufacturing regulations, and labeling requirements preempted negligent manufacture and failure to warn claims), *cert. granted* —— U.S. ——, 116 S.Ct. 806, 133 L.Ed.2d 752 (1996).

In light of these precedents, the Court holds that the Plaintiffs' claims for defective design, failure to warn and breach of implied warranties are preempted by the MDA. Each of these claims would impose requirements "different from, or in addition to," the FDA's requirements. Therefore, under the MDA's preemption clause, those claims are preempted.

### D. Adulteration

■ Ultimately, however, the court in *Mitchell* held that the MDA did not preempt all of the Mitchells' claims. The court considered FDA regulations on the subject of preemption as part of the "text and structure" of the MDA. The FDA regulations are agency interpretations of its own authorizing statute. Such agency interpretations of statutes are controlling absent a contrary congressional intent. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The regulations considered by the court in *Mitchell* are the same regulations presented by the Plaintiffs in this case. 21 C.F.R. § 808.1 provides, in pertinent part:

(d) State or local requirements are preempted only when the Food and Drug Administration has established *specific counterpart regulations where there are other specific requirements applicable to a particular device* under the Act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements. *There are other State or local requirements that effect devices that are not preempted* by § 521(a) of the Act because they are not "requirements applicable to a device" within the meaning of § 521(a) of the Act. The following are examples of State or local requirements that are not regarded as preempted by § 521 of the Act:

(1) *Section 521(a) does not preempt State or local requirements of general applicability where the purpose of the requirement relates either to other products in*

*addition to devices (e.g., requirements such as general electrical codes, and the Uniform Commercial Code (warranty of fitness), or to unfair trade practices in which the requirements are not limited to devices).*

(2) Section 521(a) does not preempt State or local requirements that are equal to, or substantially identical to, requirements imposed by or under the Act.

. . . . .

(ii) Generally, Section 521(a) does not preempt a State or local requirement prohibiting the manufacture of adulterated or misbranded devices. Where, however, such a prohibition has the effect of establishing a substantive requirement for a specific device, (e.g., a specific labeling requirement, then the prohibition will be preempted if the requirement is different from, or in addition to, a Federal requirement established under the Act.

(emphasis supplied).

 The Mitchells argued that 21 C.F.R. § 808.1(d) showed that common law causes of action survived preemption unless the FDA had established "specific counterpart regulations" or "other specific requirements" for the medical device in question. The Mitchells asserted that because no such "regulations" or "requirements" existed with respect to the particular medical device at issue in that case, none of their common law causes of action were preempted. Collagen contended that the detailed premarket approval process constituted a "specific requirement." Therefore, any state laws that seek to add requirements "different from, or in addition to," the premarket approval process were preempted under the MDA. The court partially rejected the Mitchells' argument and held that "the premarket approval process constitutes a 'specific requirement' for purposes of 21 C.F.R. § 808.1(d) and 21 U.S.C. § 360k(a)." *Mitchell*, 67 F.3d at 1279. Therefore, as stated earlier, the premarket approval process serves to preempt "at least some" state law claims.

The regulation did save the Mitchells claims based on a theory of adulteration, mislabeling and misbranding, however. Un-

sure of its authority to find that the MDA preempted adulteration claims, the court stated:

> In the absence of more explicit legislative or regulatory direction, we hesitate to say, therefore, that an adulteration claim based on a product's failure to meet PMA standards—standards that have been explicitly set forth by the FDA—does not survive MDA preemption. Such a claim seeks merely to enforce the federal standard, not to add requirements "different from, or in addition to," it.

*Mitchell*, 67 F.3d at 1282. In support of its reluctance to find preemption, the court noted that

> The existing regulations, albeit laconic, presently lend some support for the view that an adulteration claim based on a products failure to meet PMA standards survives MDA preemption. See 21 C.F.R. § 808.1(d)(2) (stating that state or local requirements "equal to, or substantially identical to" federal requirements imposed under the MDA are not preempted).

*Id.* at 1282 n. 9.

Four other courts in the Seventh Circuit have considered the issue of federal preemption of state law claims of adulteration. In *Estate of LeMay v. Eli Lilly & Co.*, 881 F.Supp. 428 (E.D.Wis.1995), the plaintiffs brought an action alleging a defect in the lead wires used to connect an Automatic Implantable Cardioverter Defribrillator (AICD) to the deceased's heart. The court held that the plaintiffs' claims for strict liability, negligent design, failure to inspect and failure to warn were preempted by the MDA. The court concluded, however, that the plaintiffs' claims for negligent manufacture were not preempted. In their response to the defendant's motion for summary judgment, the plaintiffs alleged that the defendant had not manufactured the deceased's AICD system in compliance with FDA regulations. The court held that such a claim for negligent manufacturing, insofar as it sought to redress noncompliance with federal regulations, was not preempted. *Id.* at 431 (citing *Ministry of Health, Province of Ontario, Canada v. Shiley, Inc.*, 858 F.Supp. 1426, 1439 (C.D.Cal.1994); *Reiter v. Zimmer, Inc.*,

830 F.Supp. 199, 204 (S.D.N.Y.1993); *Mendes v. Medtronic, Inc.,* 18 F.3d 13, 19–20 (1st Cir.1994) (holding that negligent manufacturing claims were preempted but stating "We express no opinion on whether products liability claims are preempted only if the manufacturer complied with applicable FDA regulations."); *Martello v. Ciba Vision Corp.,* 42 F.3d 1167, 1169 (8th Cir.1994) (stating that the plaintiff's claim would not have been preempted if the plaintiff had alleged noncompliance with federal regulations)).

In *Chambers,* 917 F.Supp. 624 (S.D.Ind. 1996), the court considered the issue of preemption with respect to an implanted hip stem. The hip stem fell within the Investigational Device Exemption regulations of the MDA. The court first noted that state law causes of action based on negligence, breach of warranty or products liability were generally preempted by the MDA. However, the court found that "[u]nder certain circumstances ... a claim may still be lodged for negligent manufacturing...." *Id.* at 628 (citing *LeMay* and *Reiter*). The court clarified the parameters of this non-preempted cause of action:

> Such a claim is customarily framed as a charge that the manufacturer did not follow its own FDA approved manufacturing procedures.... It cannot be brought on the basis that the procedures approved by the FDA are negligent, because then a tort remedy would impose a requirement different from or in addition to any MDA requirement that is applicable to the product and related to safety and effectiveness.... Such a claim would be preempted.

*Id.* (citations and footnote omitted). The court recognized that negligent manufacturing claims which seek to enforce federal standards are not preempted. Such claims are identical to the adulteration claims addressed in *Mitchell.*

In *Lynnbrook Farms v. Smithkline Beecham Corp.,* 79 F.3d 620 (7th Cir.1996), the court considered the preemption issue with respect to the Animal and Plant Health Inspection Service (APHIS) of the United States Department of Agriculture (USDA). The plaintiff brought several state law claims

for damages incurred when the vaccines manufactured by the defendant failed to protect the plaintiff's cattle. Specifically, the plaintiff sued on theories of strict products liability, misrepresentation, false advertising, and breach of implied warranties of merchantability and fitness. The defendant moved for summary judgment contending that APHIS regulations preempted the plaintiff's state law causes of action. The court considered a preemption clause which mimicked the preemption clause found in the MDA: "states are not free to impose requirements which are different from, or in addition to, those imposed by USDA regarding the safety, efficacy, potency or purity of a product." *Id.* at 623 (citing 57 Fed.Reg. 38759 (August 27, 1992)). Indeed, the court looked to decisions interpreting the MDA's preemption clause in its analysis of the of APHIS's preemption. *Id.* at 628–29.

The court concluded that the APHIS regulations preempted all of the plaintiff's state law claims. In reaching its decision, the court considered a letter from the Acting Administrator of APHIS. That letter stated that "[w]e did not intend to preempt common law actions for damages arising from noncompliance with USDA regulatory standards." *Id.* at 629. The court interpreted this phrase as follows:

> APHIS' letter signals that state tort claims are available when APHIS regulatory standards are violated or disregarded. The natural conclusion to draw from this statement is that when APHIS regulations are heeded, state tort claims involving the safety, efficacy, potency, or purity of an animal vaccine do not survive. This dichotomy follows from the preemption language chosen by APHIS, as it is precisely when APHIS regulations have been satisfied that a common law action imposes requirements in addition to, or different from, those mandated by APHIS.... Where noncompliance is involved, a common law action could simply serve to impose the standards of APHIS. Thus, it is evident that APHIS intended to preempt common law claims relating to areas under its regulatory control (namely the safety, purity, potency, and efficacy of vaccines)

which would impose additional or different requirements on vaccines, i.e., common law claims involving regulated areas in cases where the manufacturer has complied with all APHIS regulations and standards.

*Id.* at 629–30. Even though the plaintiff's claims ultimately failed (see below), the court recognized the existence of an adulteration claim under a preemption clause whose wording is similar to the MDA's.

In addition, the Seventh Circuit had previously laid the way for its decision in *Mitchell* and *Lynnbrook Farms,* as well as the decisions in *LeMay* and *Chambers.* In *Slater v. Optical Radiation Corp.,* 961 F.2d 1330, 1334 (7th Cir.1991), *cert. denied,* 506 U.S. 917, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992), the court noted that the preemption principle "is limited to efforts by states to impose sanctions for compliance with federal regulations" and "does not affect cases charging negligence in the implantation or removal of a lens, or complaining of contamination of the lens." Contamination claims, like adulteration claims, allege that a particular medical device failed to meet federal standards. A plaintiff's state law claims which merely seek to enforce federal standards, rather than those different from or in addition to federal standards, are not preempted.

■ These cases offer clear precedent in this circuit for the existence of a state claim based on adulteration/contamination/negligent manufacturing insofar as all of these claims allege failure to comply with the applicable federal regulations. Since the Plaintiffs have alleged that the Defendant failed to comply with FDA regulations with respect to this particular pacemaker, the Plaintiffs have stated a cause of action which is not preempted by the MDA.

E. Summary Judgment

■ Being able to make the right allegations will not automatically protect a plaintiff's claim from summary judgment. Under Fed.R.Civ.P. 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The court's function is to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986). When the non-moving party bears the burden of proof at trial and the movant meets its burden of directing the court to items demonstrating the absence of a genuine issue of material fact, the non-moving party must produce evidence sufficient to create a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 274 (1986). If the non-moving party fails to meet this evidentiary burden, the court should, in most circumstances, grant summary judgment in favor of the movant. *Id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

Here, the Defendant has offered considerable proof that it complied with FDA regulations in every aspect of the design, manufacture and labeling of its pulse generator and leads. This evidence is sufficient to shift the burden to the Plaintiffs to produce evidence that the Defendant had not complied with FDA regulations in manufacturing the specific pacemaker involved in this case. The Plaintiffs have not done so. Instead, they complain that the pacemaker is still in the hands of the Defendant despite numerous requests for its return.

In each of the cases recognizing the existence a cause of action for adulteration, the plaintiff had not yet presented enough evidence to proceed with the claim. In *Lynnbrook* and *Chambers* the courts determined that the plaintiffs had not actually stated a claim for adulteration or to enforce the federal standard. In *Lynnbrook* the court found that the vaccines had met all federal standards for safety, purity, potency, and efficacy. The court concluded, "This is not a case involving non-compliance." *Lynnbrook,* 79 F.3d at 630. In *Chambers* the court sifted through the extensive expert testimony presented by the plaintiff and determined that the plaintiff had attempted to bring their action "on the basis that the procedures approved by the FDA [were] negligent," instead of on the theory of adulteration. Specifically, the court found that "nothing more

than speculation supports any inference that Osteonics failed to follow its own FDA approved manufacturing procedures." *Chambers,* 917 F.Supp. at 629.

In *Mitchell* the court granted summary judgment in favor of the defendant based on the plaintiffs' failure to present triable issues of fact sufficient to withstand summary judgment against them. The court upheld the grant of summary judgment because the Mitchells had failed to establish a genuine issue of material fact that the product was adulterated. The Mitchells' state law claims based on adulteration ultimately failed because they had " 'pointed to no evidence of adulteration upon which they could go to a jury.' " *Mitchell,* 67 F.3d at 1282 (quoting *Mitchell v. Collagen Corp.,* 870 F.Supp. 885, 897 (N.D.Ind.1994) (Moody, J.)).

In *LeMay* the court recognized the dearth of evidence to substantiate the plaintiff's claim but allowed the plaintiff additional time to conduct discovery on her adulteration claim. *LeMay,* 881 F.Supp. at 431. *See also, Reiter,* 830 F.Supp. at 204. The court noted that the plaintiff had raised the adulteration claim for the first time in her response to the defendants' motion for summary judgment. Since the plaintiff had not had an adequate opportunity to conduct discovery on her negligent manufacturing/adulteration claim, the court extended the discovery deadline. In *LeMay* the court even allowed the plaintiff to amend her complaint to clarify her claim for negligent manufacturing.

■ In this case, the Plaintiff has not had the opportunity to inspect the allegedly defective pacemaker. The Defendant has had control over the device and has not turned it over for inspection. Regardless of the reasons for the Defendant's actions, the Court finds that summary judgment would be premature without discovery of the medical device which forms the basis of the claim. The Court will, therefore, deny the Defendant's motion for summary judgment without prejudice and with leave to refile the motion after adequate discovery of the pacemaker is concluded. *See First Chicago Int'l v. United Exchange Co.,* 836 F.2d 1375, 1380 (D.C.Cir. 1988) (holding that the district court should not have granted summary judgment even when party failed to file Rule 56(f) affidavit when opposing motions and outstanding discovery requests alerted the court of the need for further discovery).

## F. Breach of Express Warranties

In *Mitchell,* the court held that the plaintiffs claims for breach of express warranties were not preempted by the MDA. Citing a case from the Third Circuit, the court noted that "enforcement of an express warranty would not seek to add requirements 'different from, or in addition to,' those set forth in the MDA, but rather, would 'enforce the very language which the FDA approved' on the particular label at issue." *Mitchell,* 67 F.3d at 1285 (citing *Michael v. Shiley, Inc.,* 46 F.3d 1316, 1328 (3d Cir.1995)). *See also, American Airlines, Inc. v. Wolens,* —— U.S. ——, ——, 115 S.Ct. 817, 824, 130 L.Ed.2d 715, 726 (1995) (holding that the Airline Deregulation Act of 1978 did not preempt claims "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings"); *Cipollone,* 505 U.S. at 526, 112 S.Ct. at 2622, 120 L.Ed.2d at 429 (plurality opinion) (stating that "a common law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement imposed under State law' ").

Neither party directs the court to any facts underlying this claim. The only discussion of this claim comes in the Defendant's motion for summary judgment. In that motion the Defendant argues that it is entitled to summary judgment because the claim is preempted by the MDA. *Mitchell* clearly negates this argument. Once the Defendant's unsuccessful argument is removed from consideration, neither the Defendant nor the Plaintiffs have made any showing as to why summary judgment should or should not be granted on the issue of breach of express warranties. In *Celotex,* the Supreme Court recognized that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 274 (citing Rule 56(c)). In this case, the Defendant has not met this initial burden. Summary judgment in the Defendant's favor is not warranted.

### G. Conversion

Medtronic took possession of the pacemaker after its surgical removal from Mrs. Kozma's body. To this date, the Defendant has not returned the pacemaker to the Plaintiffs. The Plaintiffs claim that the Defendant's continued possession of the pacemaker constitutes the tort of conversion. In *Computers Unlimited, Inc. v. Midwest Data Systems, Inc.,* 657 N.E.2d 165 (Ind.Ct.App.1995), the court defined the tort of conversion:

> Conversion, as a tort, consists either in the appropriation of the personal property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's.

*Id.* at 171. In this case, the Defendant exercised dominion over Mrs. Kozma's pacemaker "in exclusion and defiance of the rights" of Mrs. Kozma.

Both the Plaintiffs and the Defendant argue over the motive behind the Defendant's possession of the pacemaker. The Defendant contends that on December 21, 1994, it offered to turn the pacemaker over to the Plaintiffs so long as the Plaintiffs conducted no destructive testing on the device. (Def.'s Mot.Summ. J., Ex. 2.) The Plaintiffs counter that the Defendant made the offer only after the Plaintiffs had filed the present suit, including a claim for conversion, on December 16, 1994. The Defendant retorts that it did not receive service of the complaint until December 22, 1994, which was one day after it sent its offer to the Plaintiffs. The purpose of these arguments is unclear. The mental state of the Defendant committing the exercise of dominion is not relevant to a claim for tortious conversion. *See Computers Unlimited,* 657 N.E.2d at 171 ("Mens

rea ... is not an element of tortious conversion.... Good faith is no defense."). To make out a claim for tortious conversion, the Plaintiffs need not show that the Defendant intended to deprive Mrs. Kozma of her pacemaker. The Plaintiffs need only prove that the Defendant intended to perform the acts which deprived Mrs. Kozma's rights to the pacemaker. The Defendant claims that it did not refuse to return the pacemaker "in defiance of the rights" of Mrs. Kozma because it voluntarily offered to return the pacemaker. Such an argument seeks to require a defendant to act "defiantly" before liability may attach. No such showing is required. Therefore, the Defendant's motion for summary judgment on the claim of conversion is DENIED.

### IV. Conclusion

For the foregoing reasons, the Defendant's Motion for Summary Judgment is GRANTED with respect to the Plaintiffs' claims for strict liability/failure to warn, negligent design and breach of implied warranties. The Defendant's Motion for Summary Judgment is DENIED, without prejudice and with leave to renew, with respect to the Plaintiffs' claims for negligent manufacturing insofar as those claims assert adulteration or failure to comply with FDA regulations. The Defendant's Motion for Summary Judgment is DENIED with respect to the Plaintiffs' claims for breach of express warranties and conversion.