**ESTATE OF Lyle L. LeMAY, by the personal representative, Dolores A. LeMAY, and Dolores A. LeMay, individually, Plaintiffs, and**

**Wisconsin Auto & Trust Dealer Association, Inc., a domestic corporation as sponsor and administrator of Wisconsin Auto & Truck Dealer Association, Inc. Insurance Trust, a multiple employer trust domiciled in the State of Wisconsin, and Prudential Insurance Company of America, a foreign corporation, Subrogated Parties, Plaintiffs,**

**v.**

**ELI LILY & CO. and Cardiac Pacemakers, Inc., Defendants.**

**Civil Action No. 93–C–0142.**

United States District Court, E.D. Wisconsin.

April 9, 1997.

Paul Gagliardi, Gagliardi & Associates, Salem, WI, for Plaintiffs.

Patricia K. McDowell, Quarles & Brady, Milwaukee, WI, for Subrogated Parties.

Charles H. Bohl, Pamela M. Schmidt, John Spector, Whyte, Hirschboeck & Dudek, Milwaukee, WI, for Defendants.

**DECISION AND ORDER**

REYNOLDS, District Judge.

Cardiac Pacemakers, Inc. ("CPI") manufactured a pacemaker that doctors placed in Lyle L. LeMay ("LeMay"). After 15 months, one of the pacemaker's leads fractured, and the doctors had to replace the pacemaker. LeMay died of complications from the second surgery. LeMay's estate and his wife ("the LeMays") sued the defendants under a variety of tort theories. They alleged that CPI negligently designed the pacemaker, negligently manufactured the pacemaker, and negligently labeled the device. Finally, the plaintiffs sued under a strict liability theory.

So far the case is a straightforward products liability action; however, the existence of federal regulations required the parties and the court to undergo a long digression into the preemption doctrine. The pacemaker, an Automatic Implantable Cardioverter Defibrillator ("AICD"), is a Class III medical device under the Medical Device Amendments ("MDA") to the Federal Food, Drug, and Cosmetic Act. Any Class III device must pass extensive premarket testing. In turn, the MDA preempts states from adding additional requirements to devices that have received premarket approval. 21 U.S.C. § 360k(a).[1]

The defendants moved for summary judgment, arguing that the MDA preempted all of the plaintiffs' claims. Based on the magistrate judge's recommendations and this court's own determination, the court granted summary judgment in part on March 15, 1995. In the court's view, the plaintiffs could sue for the defendants' negligence in failing to manufacture the AICD in compliance with the Food and Drug Administration's ("FDA") regulations, but the MDA preempted all other claims. *Estate of LeMay v. Eli Lilly & Co.*, 881 F.Supp. 428, 431 (E.D.Wis.1995). The court ordered the plaintiffs to amend their complaint to clarify the remaining theory and allowed the defendants to renew their motion for summary judgment at the end of discovery. *Id.*

Neither party was happy with the order, and both moved to reconsider. In August 1995, both parties moved for summary judgment. On October 7, 1996, the magistrate judge recommended that this court deny both motions for reconsideration, deny the plaintiffs' motion for summary judgment, and grant the defendants' motion for summary judgment. The court reviews the recommendation *de novo.* 28 U.S.C. § 636(b)(1)(C) and Local Rule § 13.03(c) (E.D.Wis.). The court adopts the recommendation on all issues except the defendants' motion for summary judgment. Because, based upon the loss lead, a jury could infer that the defendants negligently failed to meet the FDA requirement, summary judgment is inappropriate.

*A. Motions For Reconsideration*

The defendants ask the court to reconsider and rule that the MDA preempts the remaining claim. The plaintiffs ask the court to reconsider and reinstate their amended neg-

1. [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—

(1) which is different from, or in addition to, any requirement applicable under this Act to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act.

ligent design and labeling claims as well as their strict liability claim. The court has nothing to add to the magistrate judge's recommendation and denies the motions for reconsideration.

*B. The LeMays' Motion for Summary Judgment*

For the LeMays to succeed, they must prove that CPI did not follow the FDA regulations when making AICD. Although the LeMays rely on *res ipsa loquitur* and spoilation of the evidence as liability theories, they rely only on *res ipsa loquitur* for summary judgment in their favor. Roughly interpreted as "the thing speaks for itself," *res ipsa* allows a jury to infer a defect caused a product to break when the plaintiff has provided the proper foundation. *Rennick v. Fruehauf Corp.*, 82 Wis.2d 793, 800, 264 N.W.2d 264, 267 (1978). A jury may infer that a defect existed when the product left the manufacturer's control if (1) the problem ordinarily occurs only if there is negligence, (2) the plaintiff was properly using the product, and (3) the plaintiff can disprove intervening causes of the defect that could have occurred after the product left the manufacturer's control. *Jagmin v. Simonds Abrasive Co.*, 61 Wis.2d 60, 74, 211 N.W.2d 810, 817 (1973).

*Res ipsa* allows the jury to infer negligence—it does not require the jury to draw that inference. *McGuire v. Stein's Gift & Garden Center*, 178 Wis.2d 379, 389, 504 N.W.2d 385, 389 (Wis.Ct.App.1993). For the LeMays to receive summary judgment, however, the defendants' negligence must be the only possible inference from the facts. Therefore, the court denies their motion.

*C. Defendants' Motion for Summary Judgment*

Summary judgment is appropriate if there is no dispute as to a material fact and the moving party deserves judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party, CPI, has the initial responsibility of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The LeMays, having the burden of proof at trial, may not rest on the pleadings; rather, they must demonstrate a specific, factual dispute. *Id.* at 324, 106 S.Ct. at 2553. The court may not judge credibility, and it draws all reasonable inferences in favor of the nonmoving party. *Illinois v. Bowen*, 808 F.2d 571, 575 (7th Cir. 1986).

The defendants argue that there is no proof of their failure to follow any FDA regulations; on the contrary, all their records and tests show that they complied with the regulations. The plaintiffs rely on two arguments: *res ipsa loquitur* and spoilation of the evidence. The magistrate judge rejected the application of *res ipsa loquitur*, but the recommendation never specifically addressed the spoilation of the evidence theory. Although the court agrees that *res ipsa loquitur* is inapplicable in this case, the spoilation of the evidence theory is viable.

## FACTS

In two separate procedures during September 1990, LeMay received an AICD pacemaker that included a defibrillator (an AICD generator), two Model rate-sensing leads, and two patch leads. CPI's records indicate that the leads were manufactured in compliance with the FDA's regulations. (Defs'. Proposed Findings of Facts ¶¶ 44–49).

LeMay's pacemaker broke in late 1991, and he underwent exploratory surgery on January 7, 1992. The surgeon and the electrophysiologist discovered that one patch lead and one rate-sensing lead had fractured. Dr. Saedi, the surgeon, reported removing the defibrillator but made no record of removing the broken leads. Dawn Schneider, a nurse, recorded that she gave a broken portion of a lead to the CPI representatives. Dr. Niazi also states that a CPI representative received the broken portion of the posterior patch lead. Neither CPI representative who was present at the surgery remembers receiving the lead.

CPI says it never received the lead. Its records contain no evidence that CPI received the lead. Nonetheless, a former employee of CPI, Kathleen Vulu, who examined products removed from patients, initially

stated that she remembered examining LeMay's lead. After consulting CPI's records, however, she stated that she did not believe she ever analyzed LeMay's lead.

An examination of the lead will usually reveal the cause of its malfunction.

## DISCUSSION

Assuming the LeMays can establish the three elements of *res ipsa loquitur,* the court will not allow its use because its application would nullify preemption. *Res ipsa loquitur* means that the device malfunctions only if there was negligence. If a jury found for the LeMays based on *res ipsa loquitur,* CPI could have negligently failed to follow the FDA regulations or CPI could have negligently manufactured the device in some other way. The MDA, as discussed above, allows a negligence action to proceed only for violations of the FDA regulations. Because *res ipsa loquitur* could allow recovery for negligence that Congress has preempted, the LeMays may not rely on the doctrine.

If the LeMays could establish that leads only break when the manufacturer fails to follow the FDA regulations, then they could rely on *res ipsa loquitur.* The record does not support that finding.

Under the LeMays' second theory of liability, if CPI intentionally destroyed the lead, a jury could infer that an examination of the lead would have revealed CPI's failure to meet the FDA regulations. *See Partington v. Broyhill Furniture Indus., Inc.,* 999 F.2d 269, 272 (7th Cir.1993); *Village of West Milwaukee v. Bergstrom Mfg. Co.,* 242 Wis. 137, 143, 7 N.W.2d 587, 589 (1943) (*quoting* 1 Wigmore, Evidence, 2d Ed., § 285). In response, CPI argues that it never received the lead.

Although a close call, a jury accepting all of the LeMays' evidence could infer that CPI received the lead and intentionally destroyed it. Based on Schneider's and Niazi's testimony, CPI representatives received the broken lead. Although the representatives dispute that testimony, the court, at summary judgment, accepts the LeMays' version of all disputed facts. Once CPI had possession of the lead, federal law required CPI to preserve it. 21 C.F.R. § 820.162. Based on its duty to preserve the lead and its denial that it ever had the lead, a jury could infer that CPI destroyed the lead to avoid liability.

Vulu's testimony could reinforce that finding. Initially she remembered having seen LeMay's sample, but she changed her testimony after CPI officials showed her all of their documentation. A jury could conclude that Vulu's initial recollection is more reliable than the lead's absence from CPI's records.

Because a jury could infer that CPI intentionally destroyed the lead, summary judgment is inappropriate.

## CONCLUSION

The court denies the defendants' motion for reconsideration.

The court denies the plaintiffs' motion for reconsideration.

The court denies the plaintiffs' motion for summary judgment.

The court denies the defendants' motion for summary judgment.

The court denies the plaintiffs' motion to strike the affidavit of Kathleen Vulu.

The scheduling clerk will contact the parties to schedule the final pretrial conference and trial.